Good afternoon. May it please the Court. Jeffrey Jones for the appellant, Richard Johnson. In Maryland v. Craig, the Supreme Court held that traditional cross-examination, when it's supplanted by a special procedure to accommodate a traumatized child witness, that procedure has to comport with three elements of effective cross-examination. The witness under oath cross-examination. And the third element, the jury has to have the opportunity to observe the witness's demeanor as she makes his or her statement while in the act of testifying. Here, that third element of effective confrontation was missing. The special procedure did not allow the jury to meaningfully observe the witness's demeanor while she was answering the questions. When she – when the jury heard defense counsel's questions on cross-examination, the witness was bent over a notepad writing out her answer. And when the jury heard that written answer recited by the trial judge, the witness was sitting silently. And Craig v. Maryland, and the – I'm not sure this makes any difference. As the judge was reading the answers that had been written, does the record tell us whether the jury can observe the face of the witness? The record – the record addresses that, but ambiguously. The court – the record and the court of appeals summarized it. The jury may have had difficulty seeing her. She turned – while she was writing down her answer and doing her testimony, she turned away from the defense, from counsel and the defendant, and the jury may or may not have been able to observe her. My impression, and again, we're reading between the lines, there was no finding made that she was not always in the presence of the jury, however. Isn't that true? Not – I – there was no finding that she was ever not in the presence of the jury. So how – you focus on this third point about observing the demeanor. But what do you do in the case of a deaf witness, for example, that doesn't sign? Because, you know, we know from signing that there's a lot of expression in signing. But if you have a deaf witness that doesn't sign but can only transcribe and answer, what's the difference there? I think it's – I think the Supreme Court has said it's a difference. And there is no Supreme Court authority addressing a witness who's deaf or otherwise unable due to physical disability to testify normally. And this Court addressed that in a case called Vasquez and said there's no Supreme Court case on point. And that's kind of what we're looking for here, because I understand why you've taken the best Supreme Court case you have, but it does seem in the habeas context that we have to thread this needle of controlling Supreme Court authority. I think the case of a hearing-impaired witness is separate and not on point for the reason the Court explicitly addressed this in Coy versus Iowa. And Justice Scalia, writing for the majority, and he was addressing a point made by – made by the dissent in that case. And in Coy, you had a situation where the defendant and the witness couldn't see each other because of the screen. And the dissent had made the point, well, what about a witness that can't see? What if the witness was blind? Similar analogy. And the majority wrote the dissent's contention that the importance of the confrontation right is belied by the simple observation that a blind witness might have testified against a pellant seems no more – no more true to us than the importance of the right to live oral cross-examination is belied by the possibility that a speech- or hearing-impaired witness might have testified. And what I think that goes to, the reason that's not a posit, is because the Confrontation Clause is flexible. If you have a witness that literally can't testify because they're not physically able to, the Confrontation Clause will accommodate that. But here – Sotomayor, you had a situation where you talked about a physical inability, but there's an emotional, psychological inability to testify in the normal context. True. So had we had this procedure and the answer was written out, in your view, would it have made a difference if someone other than the judge had read the answer? I think – I don't – I think that would have made a difference. I don't think that's the dispositive question. I think the judge, having read it, made it worse. So what I'm just trying to do is get closer to a Supreme Court case, which we're trying to rely – or look to and rely on, and you do have these variations on the theme, all of which suggesting that there's not a controlling Supreme Court case. So that – that's really my concern. I see. And I – and I – I think the argument is very appealing that you've made. I'm just trying to fit it into the construct that we're deciding it under. Yes. I understand. And I think that's what your – the point you just made shows that – that Craig – Maryland v. Craig isn't on all fours. It's not precisely on point. And I would just point out that under the unreasonable application of the prong, it doesn't need to be so precisely on point. It needs to be analogous enough that the principle applies. And I think the principle here is that you have a – it has to be analogous enough so that the California court of appeal, had it taken a close look at Craig, would have – would have recognized its error. And so it's got to be so clearly established that – that the California courts will know what to do. Otherwise, your remedy is to take a cert petition. True. Yes. And it would – well, but – Did you file for cert in this case? Did you file for cert in this case? I haven't filed a cert petition in this case. Well, it's probably a little late. The time has expired, I assume. Well, no. It would be – the cert petition would be after – would be after you decide the case. No. No. The cert petition from the California decision. The direct – the direct appeal. I haven't been involved in the case until you decide. We should have asked, was this – was a cert petition filed? By you, I meant – I meant you and your predecessors. I understand. Okay. So I didn't understand. No, that – that's not – that hasn't been done. No. You – they might well have had – I mean, if this is a novel proposition, then the Court might well have had an interest in developing the Craig-Coy line of – line of cases. And now you've been put in the awkward position of having to come and tell us, well, the California court of appeal didn't look at those cases closely enough because it's obviously wrong. And that's a very difficult argument to make. If I – I believe, though, that finding – finding Craig not to be on point in this case is objectively unreasonable, because Craig – Craig addresses a situation where you have an – you have a child witness who cannot testify, just in this case, and you adopt an alternative procedure that supplants traditional cost of demonstration. But the difference – were we able to decide this de novo instead of under the deferential standard? I might give a different answer. But the difference here is that the witness is in full view. The witness – the jury can see the witness writing it out. The jury can see at least some of the reactions. My guess is that at some point, the witness turns her face so that the jury can see it. There's nothing in the record to suggest that wouldn't be true. Whereas in Craig, they can't even see the witness at all. She's behind the screen. Well, that's – that's Coy, yes. In Craig, there was a video. I'm sorry, Vice. I flipped the names. Yeah, yeah. Right. I can – my best answer to that is relying on the language of Craig itself. And Craig, in many places, the third element, observing the witness's demeanor, every time that requirement is mentioned, it's while the witness is testifying. The demeanor must be observed while the witness is giving its answer. Craig says that. It relies on California Green and Maddox v. United States. In both cases, the jury must observe the witness while in the act of testifying. The court says that a bunch of different ways. But was it Craig that said something to the effect that you need to be fact-specific in how you craft the procedure? One of the cases uses that phrase. And it seems to me here the court is faced with a situation, and it's trying to be fact-specific about how the court can make sure the witness will testify but also protect the fragility of the witness. So if the court doesn't have some leeway in that, what do we do with this admonition that you need – you can use fact-specific circumstances? I think the court does. I think the court must have leeway, and it does. But the – I believe when you read Maryland v. Craig, that leeway does not include divorcing the witness's demeanor from her testimony. The jury – and I think common sense comports with that. Counsel, the jury did have an opportunity. I mean, the jury witnessed everything up to the point where she starts writing her answers. They've seen the colloquy between the witness and the judge and counsel. They have seen her distress and are perfectly capable of making a judgment as to why she might be so distressed. I mean, since I haven't seen her, I have no idea whether she appeared credible or not credible to the jury. From its verdict, we assume that they thought that she was credible in her distress and that it was for a particular reason. But they did get to see all of that. So there wasn't a denial of confrontation in that sense. They didn't get to see cross-examination. They got to see the witness, and they got to see that she was distressed. And I don't think there's any indication that she wasn't legitimately, honestly distressed, and certainly. But there was no cross-examination, essentially, in the meeting – in the meeting of Maryland v. Craig. The cross-examination was silent, and the witness, she was – needed to be confronted about prior instances. She'd made two – two potentially exonerating statements, and she was – she couldn't – ultimately couldn't be confronted about those statements. And the judge read the answers about those – her denial. She denied – she denied having made those statements. But the jury didn't get to evaluate her credibility on that very, very critical point for the defense. The whole – the whole defense rested on it. Thank you. May I have a moment for rebuttal? I will give you some time for rebuttal, yes. Please. May it please the Court. Charity Whitney on behalf of Respondent – the Attorney General. There was no Confrontation Clause error in this case. All of the essential elements of confrontation as laid out by the United States Supreme Court were protected when the victim testified in the case of Barr. So the State's position is that there's no constitutional error at all, not just merely no AEDPA error? Correct. Correct. If there was no constitutional error at all, then it was certainly reasonable of the State court to determine such as well. We have a strong level of deference in AEDPA cases, as, of course, you know. But we believe that it's very clear that there was no confrontation error here, as the four elements are. But by arguing that there's no constitutional error at all, are you inviting this Court to decide that question anew? Oh, well, this Court can, of course, take the prerogative to do as it will. However, it is bound by AEDPA in this case. And so the question is whether or not the State court was objectively unreasonable here. But to cut to the issue as Petitioner has framed it, there's simply all of the central elements of confrontation were met in this case, including the observation of demeanor by the trier of fact. The jury was able to the State court did find, and the record does show, that the jury was able to observe the victim's demeanor at the time she was testifying. And the State court even explained that they were able to observe her demeanor when she was writing down answers because her voice was not the only factor that goes into observation of demeanor. The jury was also able to see, for instance, her posture. They were able to hear her crying. They were able to see her facial features insofar as she faced towards the gallery. They were able to evaluate her attitude towards the court, her attitude towards the questions being asked. And all of these things are components of what make up demeanor of a witness when being assessed for credibility. Unless this Court has any questions. Kagan. It appears not. Well, in that case, thank you very much, Your Honors. You have some rebuttal time if you wish. The Craig decision, quoting Maddox v. United States, and discussing the requirement that the jury is able to observe the witness's demeanor, the jury must be able to observe what the jury must be able to observe is, I quote, the manner in which he or she gives his testimony, whether he's worthy of belief. Here, the jury did not get to observe the manner in which she gave her testimony on cross-examination. And with regard to the point that they saw her while she was writing, to the extent they could, how do you observe someone's credibility while they're writing something down? I'm not — I don't think anyone knows what the difference between a liar writing and a truthful person writing on a notepad looks like. And I think the jury was deprived of its right to evaluate her credibility in the manner that it should have, and therefore, it was an unreasonable application of Craig. Thank you very much. Thank you. I thank both of you for the argument this afternoon. Johnson v. McDowell is submitted. The last argument this afternoon is United States v. Murray.
judges: McKeown, W. Fletcher, Bybee